UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

 JAMES PATRICK H., Jr.,

                              Plaintiff,

v.                                                    1:20-CV-0764
                                                      (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC         KENNETH HILLER, ESQ.
  Counsel for Plaintiff                     BRANDI SMITH, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                 BRITTANY GIGLIOTTI, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II    MAIJA DIDOMENICO, ESQ.
  Counsel for Defendant                     QUINN DOGGETT, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

        The parties consented, in accordance with a Standing Order, to proceed before

the undersigned.  (Dkt. No. 21.)  The court has jurisdiction over this matter pursuant

to 42 U.S.C. § 405(g).  The matter is presently before the court on the parties' cross-

motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure.  For the reasons discussed below, Plaintiff's motion is denied, and the

Commissioner's motion is granted.

## I.      RELEVANT BACKGROUND

## A.      Factual Background

Plaintiff was born in 1972.  (T. 177.)  He completed the 10th grade.  (T. 182.)
Generally, Plaintiff's alleged disability consists of back injury and ankle/foot injury.  (T.
181.)  His alleged disability onset date is April 1, 2013.  (T. 177.)  His date last insured is
December 31, 2018.  (*Id.*)  His past relevant work consists of firefighter and iron worker.
(T. 182.)

## B.      Procedural History

On December 31, 2014, Plaintiff applied for a period of Disability Insurance
Benefits ("SSD") under Title II of the Social Security Act.  (T. 68.)  Plaintiff's application
was initially denied, after which he timely requested a hearing before an Administrative
Law Judge ("the ALJ").  On April 28, 2015, Plaintiff appeared before the ALJ, Lisa B.
Martin.  (T. 30-58.)  On Mary 26, 2017, ALJ Martin issued a written decision finding
Plaintiff not disabled under the Social Security Act.  (T. 15-23.)  On March 28, 2018, the
Appeal Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision
the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought
judicial review in this Court.

On July 31, 2019, the United States District Court Western District of New York
issued a Decision and Order remanding the case for further administrative proceedings.
(T. 748-753.)  On August 21, 2019, the AC issued an Order vacating the unfavorable
decision and remanding the case for further administrative proceedings consistent with
the Court's Order.  (T. 758.)

On February 11, 2020, Plaintiff appeared before ALJ David Begley.  (T. 684-714.)  On February 25, 2020, ALJ Begley issued an unfavorable decision.  (T. 665-675.)  Plaintiff again timely sought judicial review in this Court.

### C.    The ALJ's 2020 Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 667-675.)  First, the ALJ found Plaintiff met the insured status requirements through June 30, 2020 and Plaintiff had not engaged in substantial gainful activity since April 1, 2013.  (T. 668.)  Second, the ALJ found Plaintiff had the severe impairments of lumbar spine degenerative disc disease and left foot degenerative joint disease, status-post open reduction internal fixation.  (*Id.*)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (*Id.*)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff:

> would be limited to only occasional pushing and pulling with the lower left extremity; prohibited from climbing ladders, ropes, or scaffolding; limited to only occasional climbing of ramps or stairs, occasional balancing, stooping, kneeling, crouching, or crawling; need to avoid concentrated exposure to extreme cold, concentrated exposure to humidity and wetness; need to avoid all exposure to slippery and uneven surfaces as well as hazardous machinery, unprotected heights, and open flames; would be limited to doing simple, routine, repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions, few (if any) workplace changes; and [Plaintiff] would need an opportunity as often as every 30 minutes to briefly change positions for one or two minutes, in addition to the regularly-scheduled breaks during the day, which would allow for longer changes in position.

(T. 668-669.)[1]  Fifth, the ALJ determined that Plaintiff was unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 673-674.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes one argument in support of his motion for judgment on the pleadings.  Plaintiff argues the ALJ failed to properly evaluate opinions from treating sources, Brian McCourt, D.C. and Edward O'Brien III, M.D.  (Dkt. No. 10 at 14-20.) Plaintiff filed a reply in which he deemed no reply necessary.  (Dkt. No. 13.)

### B.    Defendant's Arguments

In response, Defendant makes one argument.  Defendant argues the ALJ properly weighed the opinion evidence and his determinations were supported by substantial evidence.  (Dkt. No. 11 at 11-18.)

## III.   RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were

---

[1]       Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.   Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV.   ANALYSIS

Plaintiff argues the ALJ "rejected" the opinions of Plaintiff's treating physician and chiropractor without considering the relevant factors outlined in the regulations and without providing good reasons.  (Dkt. No. 10 at 14-20.)  Plaintiff further argues the ALJ failed to cite specific evidence to support his conclusion the opinions were inconsistent with the evidence of record, failed to recognize the providers' specialties, and failed to cite evidence that supported the opinions.  (*Id*. at 17.)  Defendant argues the ALJ properly evaluated the opinions and articulated legally valid reasons to support his analysis.  (Dkt. No. 11 at 11-12.)  For the reasons outlined below, the ALJ properly

weighed the various opinions provided by the treating sources and substantial evidence

supported his determinations.

In general, the opinion of a treating source will be given controlling weight if it "is

well supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in [the] case record."  20

C.F.R. § 404.1527(c)(2)[2].  When assigning less than "controlling weight" to a treating

physician's opinion, the ALJ must "explicitly consider" the four factors announced in

*Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95

(2d Cir. 2019) (internal quotation marks omitted).  Those factors, referred to as "the

*Burgess* factors,"  are "(1) the frequen[cy], length, nature, and extent of treatment; (2)

the amount of medical evidence supporting the opinion; (3) the consistency of the

opinion with the remaining medical evidence; and (4) whether the physician is a

specialist."  *Estrella,* 925 F.3d at 95-96 (citation omitted); *see* 20 C.F.R. §

404.1527(c)(2).  A reviewing court should remand for failure to explicitly consider the

*Burgess* factors unless a searching review of the record shows that the ALJ has

provided "good reasons" for its weight assessment.  *Id.* at 96; *see Guerra v. Saul*, 778

F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly consider the

---

[2]      On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017. Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017); *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process). Here, although the agency's final decision was issued after the effective date of the final rules, Plaintiff filed his claim before March 27, 2017. Thus, the 2017 revisions apply to this case, except for those rules that state they apply only to applications/claims filed on or after March 27, 2017.

*Burgess* factors when assigning the treating physician' opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient "good reasons" for the weight assigned.").

In addition, chiropractors, such as Dr. McCourt, are not acceptable medical sources under the regulations.  20 C.F.R. § 404.1502(a).  Because a chiropractor is not an acceptable medical source, an ALJ is not required to give a chiropractor's opinion controlling weight under the regulations for treating sources.  *Brush v. Berryhill*, 294 F. Supp. 3d 241, 259 (S.D.N.Y. 2018) (citing *Diaz v. Shalala*, 59 F.3d 307, 313-314 (2d Cir. 1995) (chiropractor does not qualify as an acceptable medical source and therefore under no circumstances can the regulations be read to require an ALJ to give controlling weight to a chiropractor's opinion).  Although an ALJ is "free to consider" statements of other sources in making his overall assessment, "those opinions do not demand the same deference as those of a treating physician."  *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008); *see LaValley v. Colvin*, 672 F. App'x 129, 130 (2d Cir. 2017) (argument that an opinion from a non-acceptable treating medical source should be afforded the same deference as an opinion from an acceptable treating source within the meaning of the Social Security Administrations regulations is incorrect); *see Bushey v. Colvin*, 552 F. App'x 97 (2d Cir. 2014) (ALJ properly refused to afford controlling weight to opinion of a non-acceptable medical source); *see Shamburger v. Colvin,* 2017 WL 4003032, at *3 (W.D.N.Y. Sept. 12, 2017) (chiropractor is not considered an acceptable medical source such as a treating source who can provide medical opinions); *see also* SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006) ("other sources," like a chiropractor, "cannot establish the existence of a medically

determinable impairment ... [but] may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.").

Plaintiff's treating chiropractor and physician provided various opinions regarding his ability to perform his past relevant work as a firefighter and general work-related functional abilities.  On January 31, 2014, Dr. O'Brien completed a "Primary Physician's Statement of Disability" form.  (T. 338-339.)  When asked if Plaintiff's "present condition was of such nature as to permanently disable him from performing all the duties for his present position," Dr. O'Brien answered "yes."  (T. 339.)  Dr. O'Brien wrote Plaintiff had "failed back syndrome" and was "permanently disabled from his current occupation." (*Id*.)

On July 8, 2014, August 13, 2014, November 26, 2014, January 14, 2015, February 18, 2015, March 18, 2015 and April 25, 2015, Dr. O'Brien completed forms titled, "Buffalo Fire Department Injury-Work Status/Duty Restriction."  (T. 587-590, 601, 604, 611.)  When asked if Plaintiff could answer phones, sit, stand/walk, drive, and able to lift/carry 10lbs with both arms, Dr. O'Brien checked "no."  (T. 587-590, 601, 604, 611.) When asked to note any other restrictions, the doctor wrote Plaintiff was permanently disabled.  (T. 587-590, 601, 604, 611).

On December 9, 2019, Dr. McCourt completed a form titled "Physical Treating Medical Source Statement."  (T. 831-835).  Dr. McCourt opined Plaintiff could: walk for one block without rest or severe pain; sit for 5 to 10 minutes at a time; stand for 10 to 15 minutes at a time; rarely twist; and never stoop/bend, crouch/squat, climb ladders, or climb stairs.  (T. 832, 834.)  He stated Plaintiff had been advised to alternate positions periodically.  (T. 833.)  Dr. McCourt did not complete the section of the form asking how

many pounds Plaintiff could lift and carry.  (T. 833.)  He opined Plaintiff's impairments

would likely produce "good days" and "bad days" and cause him to be absent from work

more than 4 days per month.  (T. 834.)  He stated Plaintiff was "totally disabled due to

injury sustained in April of 2013."  (*Id.*)

First, the ALJ properly assigned no weight to the sources' statements pertaining

to Plaintiff's disability status.  (T. 671.)  As the ALJ explained, the determination of

disability under the Act is an administrative finding expressly reserved solely to the

Commissioner, not to any medical source.  (T. 671); *see* 20 C.F.R. § 404.1527(d)(1)

("[a] statement by a medical source that you are 'disabled' or 'unable to work' does not

mean that we will determine that you are disabled").  Therefore, the ALJ properly

concluded the regulations did not require him to "give any special significance" to

medical source statements on issues reserved to the Commissioner.  (T. 671); *see* 20

C.F.R. § 404.1527(d)(3) ("[w]e will not give any special significance to the source of an

opinion on issues reserved to the Commissioner").

Second, the ALJ explained he assigned "great weight" to Dr. O'Brien's opinion

that Plaintiff was unable to perform the duties of a firefighter, which the vocational

expert classified as a very heavy, skilled job.  (T. 671, 708.)  The ALJ explained the

opinion was consistent with Plaintiff's history of chronic back and ankle pain, as well as

the vocational expert's testimony that Plaintiff could no longer perform the job given his

RFC.  (T. 671, 708).

Third, the ALJ properly applied the factors in the regulations in assessing the

opinions.  Plaintiff's assertion, that the ALJ failed to recognize the providers' treating

relationship and specialties as required by the regulations is without merit.  (Dkt. No. 10

at 17.)  In his written decision the ALJ noted Dr. McCourt was Plaintiff's "treating chiropractor."  (T. 671.)  Plaintiff also argues the ALJ failed to recognize Dr. McCourt's "specialization."  (Dkt. No. 10 at 17.)  However, Plaintiff does not elaborate on what area of "specialization" he is referring to.  (*Id*.)  The ALJ further recognized Dr. O'Brien as Plaintiff's "treating physician."  (T. 671.)  Therefore, the ALJ was aware of the treating status of the providers and considered such in his written decision.

The ALJ properly assigned "little weight" to Dr. O'Brien's opinion Plaintiff could not sit, stand, walk, drive, or lift/carry ten pounds with both arms and substantial evidence supported his determination.  (T. 672, 587-90, 601, 604, 611.)  The ALJ explained that the limitations proposed by Dr. O'Brien were "entirely inconsistent with [Plaintiff's] longitudinal evidence of record."  (Tr. 672.)  The ALJ noted, as an example of inconsistency, that Plaintiff "consistently demonstrated a normal gait (albeit slow at times) with no evidence of sensory deficits."  (T. 672.)  Therefore, the ALJ properly relied on Plaintiff's unremarkable clinical findings in affording Dr. O'Brien's opinion less than controlling weight.  *See Curry v. Comm'r of Soc. Sec.*, --- F. App'x ---, No. 20-1472, 2021 WL 1942331, at *3 (2d Cir. May 14, 2021) (ALJ properly considered factors in weighing treating source opinion, including inconsistency between opined limitations and objective treatment observations); *see Woodmancy v. Colvin*, 577 F. App'x 72, 75 (2d Cir. Sept. 2, 2014) (ALJ properly assigned little weight to treating physician's opinion when contradicted by unremarkable clinical findings).

In assigning "little weight" to the opinions of Dr. McCourt, the ALJ properly noted he was not an acceptable medical source.  (T. 672.)  The ALJ further concluded his opined limitations were "inconsistent" with the longitudinal evidence, such as

observations of a normal gait and no sensory deficits.  (*Id*.)  Although the ALJ broadly cited the record to support his weight determinations of both sources' opininos, the ALJ's reasoning can easily be gleaned from the written decision.  *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) ("An ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision.")).

Indeed, as outlined by the ALJ in his decision, the objective observations and treatment notations in the record were inconsistent with the opined limitations provided by Drs. O'Brien and McCourt.  The ALJ considered treatment observations from October 2013 during which Plaintiff complained of difficulty standing and walking; however, on examination he exhibited normal gait and negative straight leg raises.  (T. 670.)  The ALJ noted in February 2014, an MRI showed evidence of left lumbar radiculopathy; however, Plaintiff's treatment of physical therapy was not altered.  (*Id*.)  The ALJ considered an independent examination performed by Robert Bauer, M.D. in February 2015 during which Plaintiff demonstrated discomfort with range of motion; however, he had a normal gait and no extremity weakness.  (*Id*.)  The ALJ also considered the examination and opinion provided by consultative examiner, Hongbiao Liu, M.D.  (*Id*.)  Dr. Liu observed Plaintiff had difficulty with heel-toe walking and squatting, and had positive straight leg raises; however, Plaintiff demonstrated a normal gait.  (*Id*.)  Dr. Liu opined Plaintiff had "mild to moderate limitation for prolonged walking, bending, and kneeling."  (T. 322.)  The ALJ further considered treatment notations from

2016 and 2017 during which Plaintiff continued with conservative treatment despite decreased range of motion and muscle spasms.  (T. 670-671.)

In addition, the ALJ explained that Plaintiff did not experience a significant decrease in functioning despite his impairments.  (T. 671.)  Indeed, the record shows Plaintiff drove, took his dog on hour-long walks on a good day, trained his dog, helped his kids get ready for school, shopped for groceries, and performed household chores, such as cleaning, painting, and mowing the lawn.  (T. 319, 689-93, 697, 702-703.) Further, Plaintiff testified he could lift "20 [to] 30 pounds, 40."  (T. 697.)  Therefore, although the ALJ generally cited to five exhibits in his actual discussion of the medical opinion evidence provided by Drs. O'Brien and McCourt; the ALJ's reasoning can be gleaned from his entire decision in which he discussed all the relevant evidence in greater detail.

Next, Plaintiff argues the ALJ's statement, that Plaintiff's gait was noted to be "slow at times," was factually inaccurate and the record "consistently" showed Plaintiff had a slow gait.  (Dkt. No. 10 at 19.)  Plaintiff also argues the ALJ "failed to recognize other finding that were consistent" with the sources' opinions.  (*Id*.)  As outlined herein, the ALJ thoroughly and properly outlined the evidence in the record.  Although the ALJ may have erred in his statement Plaintiff's gait was "slow at times," the ALJ properly concluded Plaintiff's gait was consistently described as normal.  (T. 672.)  Indeed, as noted by Plaintiff, he consistently had a slow gait and impaired ambulation during his treatment with Dr. McCourt and also had an antalgic gait during one visit with Dr. O'Brien through January 2017 (T. 350, 367, 378, 394, 401, 415, 423); however, after that, ambulation was normal although slow through most of the relevant period (T. 435,

448, 847, 856, 872, 883, 901, 913, 924, 939, 951, 964, 972, 982, 993, 1003, 1018, 1026, 1036).  (Dkt. No. 10 at 19.)

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Substantial evidence "means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).  Here, although Plaintiff cites evidence in the record that support his assertion, he fails to show that no reasonable factfinder could have reached the ALJ's conclusions.

Lastly, Plaintiff argues "the ALJ was not permitted to rely on his lay opinion about the relevance of Plaintiff's gait and the lack of sensory deficits to undermine Dr. O'Brien's and DC McCourt's opinions."  (Dkt. No. 10 at 20.)  However, the ALJ did not impermissibly draw lay medical conclusions; instead, pursuant to the regulations, the

14

ALJ fulfilled his duty to evaluate the limitations provided by the treating sources based on the consistency of the opinion with other medical evidence in the record.  *See Curry,* 2021 WL 1942331, at *3; *see* 20 C.F.R. § 404.1527(c)(2)(3).

Therefore, the ALJ properly weighed the opinions provided by Dr. O'Brien and DC McCourt.  The ALJ's determination to afford the various degrees of weight was supported by substantial evidence in the record. The ALJ has the duty to evaluate conflicts in the evidence.  *See* 20 C.F.R. §§ 404.1567(c)(i); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise."  *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).  As long as substantial record evidence supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision.  *See Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's unfavorable determination is <u>**AFFIRMED**</u>; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is <u>**DISMISSED**</u>.

Dated:          June 7, 2021

William B. Mitchell Carter
U.S. Magistrate Judge